# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

WESLEY D. FREE,           )
                        )
      **Plaintiff,**        )
                        )
**v.**                       )      **Case No. CIV-13-48-F**
                        )
**PATRICIA GARCIA and**  )
**PAUL LAWRENCE,**      )
                        )
      **Defendants.**    )

## REPORT AND RECOMMENDATION

Plaintiff Wesley D. Free, appearing pro se, brings this action under 42 U.S.C. § 1983, alleging violations of his federal constitutional rights. United States District Judge Stephen P. Friot has referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b). The matter is now before the Court on a dispositive motion filed by Defendants (Doc. No. 39).

## BACKGROUND

When he filed this action on January 11, 2013, Mr. Free was a state prisoner incarcerated at the William S. Keys Correctional Center in Fort Supply, Oklahoma.[1] Compl., Doc. No. 1, at 1.[2] In his initial Complaint, Mr. Free named three Defendants— each of whom is or was an employee of the Oklahoma Department of Corrections

---

[1] As of March 2013, Mr. Free was no longer incarcerated. *See* Notice of Change of Address, Doc. No. 12; *see also* Notices of Change of Address, Doc. Nos. 26, 41.

[2] Citations to documents filed with the Court use the page numbers assigned by the Court's electronic filing system.

("ODOC"): Dee Butler, a Food Service Manager at Idabel Work Center in Idabel, Oklahoma; Paul Lawrence, Chief of Security at Walters Community Work Center in Walters, Oklahoma ("Walters Work Center"); and Patricia Garcia, Food Service Manager at Walters Work Center. *Id.* at 1-3, 8. On Defendants' collective motion, the Court dismissed Mr. Free's Complaint, finding that his (1) official-capacity claims seeking monetary relief against all Defendants were barred by sovereign immunity; (2) individual-capacity claims against Defendant Butler were barred by the statute of limitations; (3) individual-capacity claims against Defendants Lawrence and Garcia for alleged constitutional violations occurring before January 11, 2011, were barred by the statute of limitations; and (4) individual-capacity claims upon which relief may be granted had not been stated against Defendants Lawrence and Garcia. *See* Order, Doc. No. 31, at 1-2 (adopting Report & Recommendation, Doc. No. 27).

Mr. Free then filed an Amended Complaint against Defendants Lawrence and Garcia in their individual capacities, seeking one million dollars in punitive damages. Am. Compl., Doc. No. 36, at 1-2, 5. In his Amended Complaint, as in his Complaint, Mr. Free alleges that Defendants Lawrence and Garcia violated his First and Eighth Amendment rights under the United States Constitution while he was incarcerated at Walters Work Center. *Compare* Am. Compl. at 7-8, *with* Compl. at 8-9. Mr. Free's allegations in support of these claims involve the same set of facts. *See* Am. Compl. at 2-3, 7-8. Mr. Free states that his religion is House of Yahweh and contends that he did not receive religious meals in accordance with that religion and with ODOC policy, namely OP-030112. *See id.* at 2, 3, 7-8. Mr. Free does not challenge the constitutionality of

ODOC's policy; he asserts instead that the policy was not adhered to by Defendants. *See id.*

Mr. Free states that, upon his transfer to Walters Work Center in June 2010, he "made it clear" to Defendant Lawrence that the transfer occurred because Mr. Free's previous facility "did not want to provide [Mr. Free] with [his] required religious diet." *Id.* at 7. Mr. Free asserts that Defendant Lawrence "failed to act," prompting Mr. Free to go "personally to [Defendant] Garcia and request[] [his] religious diet" "a few days later." *Id.* Mr. Free alleges that Defendant Garcia "refused," stating, "'[W]e don't do that here you will have to go somewhere else[.]'" *Id.*

Mr. Free contends that Defendants Lawrence and Garcia violated his First and Eighth Amendment rights "the entire time period [he] was incarcerated at Walters Work Center 06-22-10 – 08-24-11" because "[n]ot one day did they ever feed [him his] three kosher meals a day that [he] was entitled to under [OP-030112]." *Id.* at 8. Mr. Free further alleges that his siblings "sent [him] food packages that were about $200.00 on a regular basis to feed [him] while at . . . Walters Work Center[,] thereby putting a hardship and burden on [his] [f]amily members to feed [him]." *Id.*

Mr. Free also states that Walters Work Center lacked a law library. *Id.* Mr. Free asserts that this fact, as well as the fact that he underwent two surgeries while incarcerated at Walters Work Center, "restricted . . . the [l]egal actions that [he] was able to pursue." *Id.* Mr. Free states that he "had to transfer to [a] higher security [facility] to pursue this [civil action]." *See id.*

Defendants collectively filed a "Motion to Dismiss/Motion for Summary Judgment," asserting that Mr. Free failed to properly exhaust his administrative remedies regarding his receipt of a religious diet, that Mr. Free failed to state a claim upon which relief can be granted, and that Defendants are entitled to qualified immunity. Defs.' Disp. Mot., Doc. No. 39, at 8-26. Concurrently with their dispositive motion, Defendants filed a Special Report prepared by the officials responsible for Walters Work Center after undertaking a review of the subject matter in the Amended Complaint. *See* Special Report ("S.R."), Doc. No. 38; *see also* Order, Doc. No. 37, at 1-2 (requiring special report in accordance with guidelines in *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978)). In their dispositive motion, Defendants rely on certain documents, including affidavits and ODOC policies, filed as attachments to the Special Report. *See* Defs.' Disp. Mot. at 10, 23-25.

Prior to the filing of the Special Report, the parties were permitted to serve discovery requests only with leave from the Court. *See* Order, Doc. No. 37, at 3. No such leave was sought. After the Special Report was filed, the parties were free to conduct discovery. *See* Order, Doc. No. 37, at 3.

Mr. Free has responded to Defendants' dispositive motion, largely reiterating his allegations that Defendants did not adhere to OP-030112 and that they thereby violated his First and Eighth Amendment rights. *See* Pl.'s Resp. to Defs.' Disp. Mot., Doc. No. 40, at 1-3. Specifically in response to Defendants' assertion that he failed to exhaust his administrative remedies, Mr. Free states: "[Defendant] Garcia did not answer my Request to Staff. So administrative exhaustion was over with at that point." *Id.* at 1

(capitalization altered). Mr. Free did not submit any evidentiary materials in support of his claims.

ANALYSIS

As discussed below, the undersigned finds that Mr. Free failed to properly exhaust his administrative remedies regarding receipt of a religious diet before filing this lawsuit, and thus, Defendants are entitled to summary judgment in their favor as to Mr. Free's diet-related First Amendment claims. As to Mr. Free's remaining allegations, the undersigned considers and finds that Mr. Free has not separately stated a claim upon which relief may be granted for a violation of his Eighth Amendment rights. Further, because certain of Mr. Free's allegations suggest a claim that he was denied access to the courts, the undersigned considers and finds that Mr. Free has not stated a claim upon which relief may be granted against Defendants as to such a claim.

A. *Whether Defendants Are Entitled to Summary Judgment as to Mr. Free's Religious Diet Claims Under the First Amendment*

In their "Motion to Dismiss/Motion for Summary Judgment," Defendants seek summary judgment under Federal Rule of Civil Procedure 56, and present matters outside the pleading, as to their affirmative defense that Mr. Free did not properly exhaust his administrative remedies regarding receipt of a religious diet. *See* Defs.' Disp. Mot. at 8, 10, 18, 22-26 (citing S.R. Attach. 13, Knutson Aff., Doc. No. 38-13, at 2); *see also* Fed. R. Civ. P. 12(d), 56; LCvR 56.1(b); *Jones v. Bock*, 549 U.S. 199, 211-17 (2007) (holding that failure to exhaust administrative remedies constitutes affirmative defense and exhaustion need not be specially pled or demonstrated in complaint). In his response,

Mr. Free presents factual allegations not contained in the pleadings regarding his efforts to exhaust his administrative remedies. *See* Pl.'s Resp. to Defs.' Disp. Mot. at 1. Thus, it is evident that Mr. Free had notice that that the Court, in ruling on Defendants' Dispositive Motion, could consider materials outside the pleadings and that Mr. Free had an opportunity to present all material pertinent to that determination. *See* Fed. R. Civ. P. 56(c)(1); *cf. Marquez v. Cable One, Inc.*, 463 F.3d 1118, 1121 (10th Cir. 2006) (noting that, even in the context of a court converting a Rule 12(b)(6) motion to a Rule 56 motion, the court need not notify the parties if the motion was styled in the alternative and raised matters outside the pleading).).

Summary judgment is a means of testing in advance of trial whether the available evidence would permit a reasonable jury to find in favor of the party asserting a claim. The Court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the Court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party. *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

A party that moves for summary judgment has the burden of showing that the undisputed material facts require judgment as a matter of law in its favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A defendant moving for summary judgment specifically on the basis of an affirmative defense must show that the undisputed material facts establish all of the elements of the defense. *See Hutchinson v. Pfeil*, 105 F.3d 562,

564 (10th Cir. 1997). If the defendant meets this burden, the burden shifts to the plaintiff to cite evidentiary material that shows there is a genuine factual dispute as to one or more elements of the affirmative defense, absent which summary judgment should be granted in favor of the defendant. *Id*.

Parties may establish the existence or nonexistence of a material disputed fact through:

- citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials" in the record; or
- demonstration "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A)-(B). Under Local Civil Rule 56.1(b), the movant's brief must contain "a concise statement of material facts" that the movant contends are not genuinely disputed. If any such fact is not "specifically controverted" by the nonmoving party, that fact "may be deemed admitted for the purpose of summary judgment." LCvR 56.1(c). Although the Court construes a pro se litigant's pleadings liberally, no party is exempt from compliance with applicable procedural rules. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007).

1. Exhaustion of Administrative Remedies Under 42 U.S.C. § 1997e(a)

A prisoner may not bring a suit under 42 U.S.C. § 1983 regarding prison conditions until he or she has properly exhausted available administrative remedies. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 90, 93-103 (2006). Absent circumstances in which a prison official's action or inaction has prevented the prisoner

from completing the process, a prisoner "who begins the grievance process but does not complete it" has not properly exhausted his or her available administrative remedies. *See Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010); *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (holding substantial compliance was insufficient for a prisoner to exhaust remedies in accordance with procedures). To properly exhaust administrative remedies, a prisoner must "us[e] all steps that the agency holds out, and do[] so *properly* (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90 (internal quotation marks omitted)). A prisoner must exhaust these remedies *even if* it "appear[s] to be futile at providing the kind of remedy sought." *Jernigan*, 304 F.3d at 1032.

### 2. ODOC Offender Grievance Process (OP-090124)

ODOC has an Offender Grievance Process (OP-090124) through which prisoners may seek resolution of complaints. *See* S.R. Attach. 12, Doc. No. 38-12 (providing OP-090124 (effective date Sept. 8, 2009)).[3] The Grievance Process first requires a prisoner to attempt an informal resolution. The prisoner "must try to resolve the complaint by talking with the . . . appropriate staff within three days of the incident." *Id.* at 6 (OP-090124 § IV.A). If the issue is not resolved, the prisoner must state the problem

---

[3] In their Statement of Undisputed Material Facts, Defendants cite and rely upon the procedures described in Special Report Attachment 12—i.e., Offender Grievance Process, OP-090124, with an effective date of September 8, 2009. *See* S.R. Attach. 12, Doc. No. 38-12. In his response to Defendants' dispositive motion, Mr. Free does not dispute that the cited version of OP-090124, as presented in Special Report Attachment 12, applies to his claims in this matter. *See* Pl.'s Resp. to Defs.' Disp. Mot. at 1-3. Accordingly, the undersigned finds that there is no genuine dispute as to the applicability of OP-090124, as presented in Special Report Attachment 12. *See* LCvR 56.1(c).

completely but briefly on a Request to Staff and submit that document to the appropriate staff member "within seven calendar days of the incident." *Id.* at 6-7 (OP-090124 § IV.B.1-2). "Staff will attempt to resolve the issue and will respond in writing within ten working days of receipt to all 'Request to Staff' forms being used to attempt informal resolution." *Id.* at 7 (OP-090124 § IV.B.4).

If the above informal efforts do not resolve the issue, a formal process exists through which prisoners may further seek resolution. The prisoner must first follow prescribed procedures to submit a formal Grievance to the reviewing authority—i.e., "[t]he facility head . . . where the incident occurred"—"within 15 calendar days of the incident, or the date of the response to the 'Request to Staff' form, whichever is later." *See id.* at 3, 7-10 (OP-090124 §§ I.D, V, VI).

If the issue remains unresolved after the reviewing authority has addressed it, the prisoner must follow prescribed procedures to "make a final appeal to the administrative review authority . . . within 15 calendar days of receipt of the reviewing authority's response or any amended response." *Id.* at 11-13 (OP-090124 § VII). The administrative review authority—i.e., "[t]he [ODOC] director or [his] designee"—may, among other actions, issue a final ruling that "conclude[s] the internal administrative remedy available to the [prisoner]." *Id.* at 3, 13 (OP-090124 §§ I.E, VII.D.1).

The Grievance Process also provides procedures for when the prisoner receives no response to a Request to Staff or Grievance. If the prisoner receives no response to a Request to Staff "in 30 calendar days of submission, the [prisoner] may file a grievance to the reviewing authority with evidence of submitting the 'Request to Staff' to the proper

staff member," "assert[ing] only the issue of the lack of response to the request to staff." *Id.* at 7 (OP-090124 § IV.B.7) (emphasis omitted).  If the prisoner receives no response to a Grievance from the reviewing authority "within 30 calendar days of submission, the [prisoner] may send a grievance to the administrative review authority . . . with evidence of submitting the grievance to the proper reviewing authority," "assert[ing] only that the [prisoner's] grievance was not answered."  *Id.* at 9 (OP-090124 § V.C.4).

3. Mr. Free's Efforts to Exhaust Administrative Remedies for His Claims Against Defendants

Defendants allege that "[Mr.] Free never filed a grievance appeal or any correspondence with the [administrative review authority] 'regarding receipt of a religious diet . . . during his incarceration at the Walters Community Work Center.'" Defs.' Disp. Mot. at 25 (third alteration in original) (quoting S.R. Attach. 13, Knutson Aff., Doc. No. 38-13, at 2).[4]  Defendants therefore contend that Mr. Free did not properly exhaust his available administrative remedies in accordance with the Grievance Process. *See id.* at 10, 25-26 (citing OP-090124 § VII.D.1).

In response, Mr. Free simply states: "[Defendant] Garcia did not answer my Request to Staff.  So administrative exhaustion was over with at that point."  *See* Pl.'s Resp. to Defs.' Disp. Mot. at 1.  Mr. Free does not mention any exhaustion efforts

_____

[4] Defendants quote from a May 28, 2014 Affidavit submitted by Mark Knutson, the ODOC Manager of the Administrative Review Authority.  *See* Defs.' Disp. Mot. at 25; S.R. Attach 13 at 2.  In the Affidavit, Mr. Knutson states that he "reviewed the records for [Mr. Free]" and found that "[Mr.] Free ha[d] not filed a grievance appeal or submitted any correspondence with [the administrative review authority] regarding receipt of a religious diet . . . during his incarceration at the Walters Community Work Center . . . ." S.R. Attach. 13 at 2.

specifically related to the alleged actions of Defendant Lawrence. *See* Pl.'s Resp. to Defs.' Disp. Mot. at 1-3; *see also* Am. Compl. at 5 (asserting administrative relief was sought "by following the Request to Staff and Grievance Policy the best I could set in place by ODOC policy" (capitalization altered)).[5] Further, Mr. Free does not specifically controvert Defendants' factual allegation that he did not file a grievance appeal or other correspondence with the administrative review authority regarding receipt of a religious diet while an inmate at Walters Work Center. *See* Pl.'s Resp. to Defs.' Disp. Mot. at 1-3. Thus, the undersigned considers this factual allegation admitted—i.e., undisputed—for the purpose of summary judgment. *See* LCvR 56.1.

Under the standard discussed above, Mr. Free was required to complete all applicable steps in the Grievance Process *properly*, unless a prison official's action or inaction prevented him from doing so. *See* 42 U.S.C. § 1997e(a); *Woodford*, 548 U.S. at 90, 93-103; *Little*, 607 F.3d at 1250; *Jernigan*, 304 F.3d at 1032. The Grievance Process concludes only upon a final ruling from the administrative review authority. S.R. Attach. 12, at 3, 13 (OP-090124 §§ I.E, VII.D.1). It is undisputed that Mr. Free did not pursue such a ruling and, thus, did not properly complete all applicable steps in the Grievance Process.

Mr. Free suggests, however, that he could not obtain the requisite final ruling because prison officials made the grievance process unavailable to him. It is true that

---

[5] Mr. Free does not allege that he took or attempted any required steps other than allegedly talking with each Defendant once in June 2010 regarding his religious diet and submitting a Request to Staff to Defendant Garcia. *See* Am. Compl. at 7-8; Pl.'s Resp. to Defs.' Disp. Mot. at 1-3; S.R. Attach. 12 at 6 (OP-090124 § IV.A).

"[w]here prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust." *Little*, 607 F.3d at 1250; *see also Jernigan*, 304 F.3d at 1033; *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011). But the facts as described by Mr. Free would not support application of that principle.

As noted, Mr. Free alleges that Defendant Garcia failed to respond to Mr. Free's Request to Staff and contends that this failure concluded his administrative remedy process. *See* Pl.'s Resp. to Defs.' Disp. Mot. at 1. To the extent that this allegation suggests that Defendant Garcia's inaction prevented Mr. Free from taking any further steps in the Grievance Process, Mr. Free's suggestion is contradicted by the Grievance Process itself. As discussed above, the Grievance Process provides a procedure by which a prisoner who receives no response to a Request to Staff "in 30 calendar days of submission" may pursue the matter further—namely, by "fil[ing] a grievance to the reviewing authority with evidence of submitting the 'Request to Staff' to the proper staff member," "assert[ing] only the issue of the lack of response to the request to staff." S.R. Attach 12 at 7 (OP-090124 § IV.B.7) (emphasis omitted). Thus, Mr. Free could have pursued the matter further in accordance with the Grievance Process, but he failed to do so. Because a method existed to address a failure to respond to a Request to Staff, Defendant Garcia's alleged inaction did not prevent Mr. Free from exhausting his available administrative remedies in accordance with the Grievance Process, as detailed above, including the requirement of obtaining a final ruling from the administrative review authority. Mr. Free does not present any other factual allegations or evidence that

could reasonably be construed as suggesting that Defendant Lawrence or Defendant Garcia—or any other prison official—prevented Mr. Free from properly exhausting his available remedies. *See* Am. Compl. at 2-3, 7-8; Pl.'s Resp. to Defs.' Disp. Mot. at 1-3.

None of the evidence in the record, even when construed in favor of Mr. Free as the nonmoving party, creates a genuine question of fact as to whether Mr. Free exhausted his administrative remedies prior to filing this lawsuit. Based on his erroneous belief that he was not required to pursue the matter further after Defendant Garcia allegedly failed to respond to a Request to Staff, Mr. Free did not complete the process. Accordingly, Defendants' affirmative defense that Mr. Free failed to exhaust his administrative remedies is established as a matter of law. Summary judgment should be entered in Defendants' favor as to Mr. Free's First Amendment claims regarding his religious diet.

### B. Whether Defendants Are Entitled to Dismissal of Mr. Free's Remaining Claims

The undersigned has not considered outside evidentiary materials in evaluating the remainder of Mr. Free's claims and instead considers whether dismissal of these claims is appropriate for failure to state a claim upon which relief may be granted. A plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56, 570 (2007). A failure to meet this standard as to any claim in the plaintiff's complaint can result in dismissal of that claim. S*ee* 28 U.S.C. § 1915A(b)(1); 42 U.S.C. § 1997e(c); Fed. R. Civ. P. 12(b)(6); *Kay*, 500 F.3d at 1218. A complaint fails to state a claim upon which relief may be granted when it lacks factual allegations sufficient "to

raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (footnote and citation omitted). The court "accept[s] all the well-pleaded allegations of the complaint and must construe them in the light most favorable to the plaintiff." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007).

"[A] pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (noting that courts "will not supply additional factual allegations to round out a plaintiff's complaint"). Bare legal conclusions in a complaint are not assumed to be true; legal conclusions "must be supported by factual allegations" to state a claim upon which relief may be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

To state a claim upon which relief may be granted under 42 U.S.C. § 1983, a plaintiff must allege sufficient facts to show *both*: (1) a violation of a right secured by the Constitution or laws of the United States, and (2) that the violation was committed by a defendant acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). When a defendant is sued in his or her individual capacity under § 1983, the plaintiff must establish, among other factors, that the defendant personally participated in the alleged violation and acted with the requisite state of mind for the type of violation alleged. Thus, a complaint fails to state a claim upon which relief may be granted under § 1983 if it is alleged only that a federal right was violated. *See Iqbal*, 556 U.S. at 676; *Daniels v.*

*Williams*, 474 U.S. 327, 330 (1986); *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976).

1. <u>Eighth Amendment</u>

In addition to Mr. Free's First Amendment claims, Mr. Free asserts Eighth Amendment claims concerning his diet. *See* Am. Compl. at 2-3, 7-8. Defendants argue that Mr. Free's Eighth Amendment claims should be dismissed because he has failed to state a claim upon which relief may be granted. *See* Defs.' Disp. Mot. at 11-12, 13-16. While the Eighth Amendment claims appear to be based on the same alleged diet-related acts as addressed above in Part A, and thus subject to summary judgment for failure to exhaust administrative remedies, the Amended Complaint could be construed as challenging the nutritional adequacy of Mr. Free's diet in general. *See id*. In view of that possibility and Defendants' argument, the undersigned considers whether Mr. Free has stated an Eighth Amendment claim upon which relief may be granted.[6]

As interpreted, the Eighth Amendment imposes duties on prison officials to "provide humane conditions of confinement . . . [by] ensur[ing] that inmates receive adequate food, clothing, shelter, and medical care, and . . . [by] tak[ing] reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation marks omitted). A prison official violates these duties only by

---

[6] In their argument and evidence for summary judgment, Defendants discuss only whether Mr. Free properly completed the Grievance Process as to his "religious diet" claims but do not address whether he otherwise attempted or completed the Grievance Process as to the adequacy of his diet in general—i.e., as to his claims under the Eighth Amendment. *See* Defs.' Disp. Mot. at 10, 25; S.R. Attach. 13 at 2.

showing "deliberate indifference to a substantial risk of serious harm to an inmate." *See id.* at 828 (internal quotation marks omitted). As to the "deliberate indifference" element specifically, the plaintiff must establish that the defendant knew of and disregarded "an excessive risk to inmate health or safety." *Id.* at 837.

A substantial question exists as to whether the inability to obtain the diet of one's choice in prison—even if the choice is borne of a religious belief—states a cognizable Eighth Amendment claim. *See LaFevers v. Saffle*, 936 F.2d 1117, 1120 (10th Cir. 1991) (affirming conclusion that when plaintiff prisoner otherwise received nutritionally adequate food, mere denial of requested vegetarian religious diet was insufficient to state Eighth Amendment claim); *Watkins v. Rogers*, 525 F. App'x 756, 759 (10th Cir. 2013) (restating the holding of *LaFevers* as "the mere denial of a requested [religious] diet is insufficient to establish a cognizable Eighth Amendment claim" (alteration in original) (internal quotation marks omitted)). The analysis of a diet-related Eighth Amendment claim typically focuses instead on whether the plaintiff prisoner has been substantially deprived of nutritionally adequate food and whether the defendant exhibited deliberate indifference to that deprivation. *See, e.g.*, *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006); *Thompson v. Gibson*, 289 F.3d 1218, 1222 (10th Cir. 2002).

Mr. Free alleges that, while he was incarcerated at Walters Work Center, "[n]ot one day did [Defendants] ever feed [him his] three kosher meals a day that [he] was entitled to under [OP-030112]" and that his siblings "sent [him] food packages that were about $200.00 on a regular basis to feed [him] . . . thereby putting a hardship and burden on [his] [f]amily members to feed [him]." Am. Compl. at 8. These statements, however,

are insufficient for the undersigned to reasonably infer that Mr. Free was substantially deprived of nutritionally adequate food and that Defendants exhibited deliberate indifference to such a deprivation.

For instance, Mr. Free's statement about his siblings sending food is insufficient to suggest that the food served at Walters Work Center was nutritionally inadequate. Mr. Free does not describe the food served or offered to him at Walters Work Center, other than to assert that the available food was not kosher. Nor does Mr. Free describe the food that his siblings sent to him. Given that Mr. Free's allegations focus on the failure of Defendants to serve Mr. Free a kosher diet, the most reasonable inference is that Mr. Free's siblings sent him food to accommodate his religious beliefs and not because he was otherwise denied nutritionally adequate food.

Mr. Free's sparse factual allegations are insufficient to show that either Defendant Lawrence or Defendant Garcia knew of and disregarded an excessive risk to Mr. Free's health or safety. Therefore, Mr. Free has failed to state an Eighth Amendment violation upon which relief may be granted under § 1983, and these claims should be dismissed. *See* Fed. R. Civ. P. 12(b)(6).

2. Access to the Courts

Finally, certain of Mr. Free's allegations suggest a claim that he was denied access to the courts. Specifically, Mr. Free alleges that Walters Work Center lacked a law library and that he was required to transfer to a higher security facility to gain access to a law library and to pursue this civil action. *See* Am. Compl. at 8. These allegations, however, were made for the first time by Mr. Free in his Amended Complaint. *Compare*

Compl. at 2, 8-9, *with* Am. Compl. at 2-3, 7-8. While Mr. Free was permitted to file an amended complaint to supply missing support for specific claims that the Court had dismissed without prejudice, Mr. Free was not granted leave to add new legal claims. *See* Order, Doc. No. 35, at 2. Thus, any claim for denial of access to the courts made in Mr. Free's Amended Complaint should be stricken as not properly asserted in this action.

Even if the Court were to consider this claim on the merits, it should be dismissed for failure to state a claim upon which relief may be granted against Defendants. *See* 28 U.S.C. § 1915A(b)(1); 42 U.S.C. § 1997e(c). Prisoners have a "fundamental constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 828 (1977); *see also Lewis v. Casey*, 518 U.S. 343, 351-52 (1996) (describing right as "meaningful access to the courts" though not imposing specific requirements upon prisons). To state a claim that one's right to court access has been violated, a plaintiff must first allege facts to establish a nonfrivolous underlying cause of action that he or she was prevented from pursuing based on the defendant's actions.[7] *Christopher v. Harbury*, 536 U.S. 403, 415-18 (2002).

Mr. Free's factual allegations regarding his access to legal resources at Walters Work Center do not implicate either Defendant Lawrence or Defendant Garcia. *See* Am. Compl. at 8. Thus, to the extent that Mr. Free is alleging that his right to access the courts was violated, he has not alleged sufficient facts to show that the actions of

---

[7] For the purposes of this brief analysis, the undersigned assumes without deciding that a "backwards looking" access-to-the-courts claim, such as Mr. Free's, would be actionable. *See*, *e.g.*, *Lynch v. Barrett*, 703 F.3d 1153, 1157, 1161-62 (10th Cir. 2013).

Defendant Lawrence or Defendant Garcia prevented Mr. Free from pursuing this lawsuit or any other cause of action. *See Iqbal*, 556 U.S. at 676; *Harbury*, 536 U.S. at 415-18. Thus, if considered by the Court Mr. Free's access-to-the-courts claims should be dismissed for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A(b)(1); 42 U.S.C. § 1997e(c); *Iqbal*, 556 U.S. at 678-79.

## RECOMMENDATION

For the foregoing reasons, the undersigned recommends that Defendants' dispositive motion (Doc. No. 39) be granted as follows:

1. The Court should grant summary judgment to Defendants under Federal Rule of Civil Procedure 56(a) as to Mr. Free's religious diet claims under the First Amendment because Mr. Free failed to exhaust his administrative remedies before filing this lawsuit;

2. The Court should dismiss any remaining diet-related Eighth Amendment claims by Mr. Free under Rule 12(b)(6) for failure to state a claim upon which relief may be granted; and

3. The Court should strike Mr. Free's claim for violation of his right to access the courts or dismiss that claim for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A(b)(1); 42 U.S.C. § 1997e(c); *Iqbal*, 556 U.S. at 678-79.[8]

## NOTICE OF RIGHT TO OBJECT

The parties are advised of the right to file an objection to this Report and Recommendation with the Clerk of this Court by February 20, 2015, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. The parties are further advised

---

[8] These recommendations, if adopted, will dispose of all claims brought by Mr. Free. Thus, the undersigned has not considered additional arguments presented in Defendants' dispositive motion, including Defendants' argument that they are entitled to qualified immunity.

that failure to timely object to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation terminates the referral in the present case.

ENTERED this 30th day of January, 2015.

CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE